```
              IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION




John T. McMahan,                )   No. 18 B 14064
                                )   Chicago, Illinois
                                )   10:00 a.m.
                     Debtor.    )   March 27, 2019




            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                 HONORABLE JANET S. BAER




APPEARANCES:

For the Debtor:                   Mr. Joseph Cohen;

For Lake Forest Bank &
Trust:                            Mr. Doug Moran;

For McMahan-Clemis Institute
of Otolaryngology:                Mr. Gregory Stern;
                                  Mr. Dennis Quaid;

For Chapter 7 Trustee:            Mr. John Guzzardo;

For U.S. Bank:                    Ms. Kinnera Bhoopal;


Court Reporter:                   Amy Doolin, CSR, RPR
                                  U.S. Courthouse
                                  219 South Dearborn
                                  Room 661
                                  Chicago, IL  60604.
```

1 THE CLERK: McMahan, Lake Forest Bank
2 & Trust versus McMahan, McMahan-Clemis Institute of
3 Otolaryngology, SC; and McMahan-Clemis Institute of
4 Otolaryngology SC versus Lake Forest Bank.
5 THE COURT: Appearances.
6 MR. MORAN: Good morning, Judge. Doug
7 Moran on behalf of Lake Forest Bank & Trust.
8 MR. COHEN: Good morning, Your Honor.
9 Joseph Cohen for Dr. McMahan individually.
10 MR. STERN: Good morning, Your Honor.
11 Gregory Stern on behalf of the debtor.
12 MR. QUAID: And Dennis Quaid for the
13 corporate debtor.
14 MR. GUZZARDO: John Guzzardo on behalf
15 of Tom Springer, Chapter 7 trustee in the individual
16 Chapter 7 case.
17 MS. BHOOPAL: Kinnera Bhoopal on
18 behalf of U.S. Bank.
19 THE COURT: Good morning, everyone.
20 Okay. Where are we?
21 MR. COHEN: Well, as to Lake Forest
22 versus McMahan, I filed my answer yesterday.
23 THE COURT: I just received it.
24 MR. COHEN: We're at issue.
25 THE COURT: Okay.

1  MR. MORAN: We have -- we have issued
2  one subpoena. We also will be scheduling the
3  continuation of the Rule 2004 examination, as well as
4  the deposition of Dr. McMahan. Mr. Cohen and I will
5  work on the scheduling of that deposition. I would
6  imagine that that would happen either in April or the
7  first part of May.
8  We're still working on the Rule 2004
9  examination and subpoena for deposition for Lynn
10  McMahan. The problem that we have right now is we
11  have no idea where Ms. McMahan is. So we're working
12  on that.
13  THE COURT: Right.
14  MR. QUAID: I would just ask
15  if the 2004 exam contemplated for the doctor is
16  going to be limited to the doctor's case, because
17  the first part of it was also applicable to the
18  corporate case.
19  MR. MORAN: And, Your Honor, the
20  adversary proceeding in the McMahan-Clemis case is
21  being, as I understand it, resolved in the Chapter 11
22  plan that is set -- that has been proposed. And my
23  understanding is that that plan is going to handle
24  the issue -- the issues that were raised in the
25  adversary proceeding in that case.

1     As such, at least as of right now, it
2  is not our intention to ask any questions related to
3  McMahan-Clemis in the 2004 exam. But there will be
4  questions in the deposition relating to
5  McMahan-Clemis because of Dr. McMahan's involvement
6  as the president of McMahan-Clemis and the issues as
7  we alleged in the adversary proceeding, first amended
8  complaint for non-dischargeability, and the adversary
9  proceeding.
10     So, we can't say that we're not
11 touching upon McMahan-Clemis because there is clear
12 allegations relating to a scheme relating to
13 McMahan-Clemis, but it's related to the allegations
14 as set forth in the first amended complaint.
15     MR. COHEN: We haven't even discussed
16 this yet, but this is not a non-dischargeability
17 complaint. It's an objection to discharge.
18     MR. MORAN: I'm sorry.
19     MR. COHEN: I only state that because
20 the statutes, the burden of proof, they're different.
21 And --
22     THE COURT: And every other lawyer in
23 this courtroom mixes the two up constantly.
24     MR. COHEN: I understand, but I try
25 not to. And I just want to -- and we have just filed

1  the answer.  We haven't started discussing the
2  2004 exam or the dep.  We'll get that worked out
3  with dates and everything else.  We'll work on the
4  scope.
5             THE COURT:  Okay.
6             MR. COHEN:  If you noticed, in the
7  last month or so things seem to have eased a little
8  bit.  That doesn't mean we're not going to be
9  fighting, but it seems to be a little more civil than
10 it was before.
11            THE COURT:  Okay.  That's a good
12 start.
13            MR. COHEN:  So I think Mr. Moran and I
14 will discuss that, figure out dates, figure out
15 scopes, see whether the corporate debtor has to be
16 involved.  I don't think so.  It's a 727 against an
17 individual.  I mean, some of the acts perhaps of the
18 corporate debtor may --
19            THE COURT:  Well, since he works for
20 the corporate debtor --
21            MR. COHEN:  Right.
22            THE COURT:  -- it's going to be
23 relevant.
24            MR. COHEN:  Exactly.  But we'll figure
25 that out.

1          MR. MORAN:  But as to the 2004 exam,
2  it's not our intention as of this date to continue
3  the 2004 exam of the corporate debtor, only the 2004
4  exam of Dr. McMahan.
5          I just want to be clear to everybody
6  in this court that there will be issues that touch on
7  McMahan-Clemis because the allegation is raised.
8          THE COURT:  Okay.  So that's the
9  status with respect to the individual adversary.
10         MR. COHEN:  So we actually probably
11 need a status date on that.
12         THE COURT:  Right.
13         MR. COHEN:  I don't know if we should
14 set a discovery cutoff at this point.  I don't think
15 so.
16         THE COURT:  I don't set them unless
17 you need them in order to sort of get people to
18 conclude what they're doing.
19         MR. COHEN:  We're doing what we can.
20         THE COURT:  So it sounds like you need
21 a long status date on this one.
22         MR. COHEN:  I would say at least 90
23 days.
24         MR. MORAN:  I think if we do 90 days,
25 at least we know where we are, you know --

1              MR. COHEN:  Right.
2              MR. MORAN:  -- at least at that point
3  we'll know what needs to be done that hasn't been
4  done.  To the extent we need court intervention,
5  we'll probably bring it before then.  But at least it
6  gives us an idea of where we are.
7              THE COURT:  All right.  So, I
8  would say why don't we go to the end of June on this
9  one.
10             MR. COHEN:  How about June 26th, Your
11 Honor?
12             THE COURT:  June 26 is just fine.
13             MR. COHEN:  Thank you.
14             THE COURT:  6/26 at 10:00 o'clock for
15 status.
16             MR. STERN:  So with respect to the
17 corporate case, we're here on the continued use of
18 cash collateral.  We uploaded, or whatever it is, a
19 draft of the proposed order for today.
20             You need a hard copy?
21             THE COURT:  Yeah, I don't have one.
22             MR. STERN:  Sure.  Can I just give you
23 one?
24             THE COURT:  Sure.
25             MR. STERN:  And it's got a budget

1  attached, and the expenses.  I think -- and we have
2  been in conversation -- Mr. Quaid has been in
3  conversation with the bank's attorneys.  It's
4  possible they are -- they have objections to the
5  continued use relating to the debtor's failure to
6  meet its projected revenues.
7             The only thing that I can say with
8  respect to that, to the extent that it's true, we
9  make adjustments somewhere else within the budget.
10 Primarily I think those adjustments come out of the
11 professionals.
12            THE COURT:  They do seem to do
13 that.
14            MR. STERN:  Okay.  We have at least,
15 I will say, stopped the bleeding of the
16 administrative fees relating to the CRO.  So that's
17 significant.  And that's only been within the last 30
18 days --
19            MR. QUAID:  Thirty to 45 days.
20            MR. STERN:  -- that's really been
21 going on.  It's my understanding that although we
22 might have projected revenues at 125 for February, it
23 came in closer to 114 we're thinking.  A little short
24 on financial information today because with Ms.
25 Alicea's promotion, she figured that she was entitled

1  to her first vacation in five or ten years.  So she's
2  out until next week --
3              THE COURT:  Okay.
4              MR. STERN:  -- apparently.  So we're
5  asking to continue the use of cash collateral until
6  April 30th, with a status date of April 24th.  I
7  would like Your Honor to know that I had drafted a
8  plan.  I think it was before the last status hearing.
9  It's going to have to be filed no later, I believe,
10 than April 15th or 16th is our 300th day.
11             THE COURT:  Okay.
12             MR. STERN:  So, by that April 15th or
13 16th date, we'll file a plan and disclosure
14 statement, and a motion to extend the time to allow
15 the confirmation process to go, so that we're all
16 timely in that.
17             THE COURT:  All right.
18             MR. STERN:  We will set those
19 motions for the same time at the status hearing on
20 the 24th.
21             THE COURT:  Okay.
22             MR. STERN:  I do note that we probably
23 continue to use -- no, it's at 10:00 o'clock?
24             THE COURT:  Okay.  And that's fine.
25             MR. STERN:  Okay.

1  THE COURT: Okay. So this is agreed
2  to?
3  MR. MORAN: Well, Your Honor --
4  MR. STERN: I wouldn't say -- I didn't
5  say that. I said they --
6  THE COURT: Well, it says agreed on
7  it.
8  MR. STERN: Oh, I'm sorry.
9  MR. MORAN: So, Your Honor, we
10  had -- Mr. Quaid and Mr. Carlson have been in
11  communication relating to this order. As to the
12  language of the order itself, we agreed to the
13  language of the order.
14  However, in an email that Mr. Carlson
15  sent to Mr. Quaid on March 20, Mr. Carlson indicated
16  that the bank is concerned about the $130,000 income
17  figure. It asked at that time that they provide the
18  data that supports that $130,000 figure, especially
19  in light of the fact that the 125,000 figure didn't
20  come in in March or in February.
21  So we're -- the issue that we have was
22  provide us with the data so that we have comfort with
23  that level of income. I communicated this with Mr.
24  Quaid yesterday, that we were still looking for that
25  data. My understanding is that data is in the head

1 of Ms. Alicea, who is in Puerto Rico, and so they
2 could not provide that. So our objection is merely
3 that we want to see that data. We want to see what
4 supports that income.
5 Now, I understand that the court, you
6 know, is in agreement of at least the budget as we
7 sit here today. If we have a shorter period of time
8 in which to come a back, a shorter status, and an
9 order that says that they will provide us with that
10 data once Ms. Alicea is back in town, say, within the
11 next week to ten days, I think it could provide the
12 bank with some comfort level.
13 But as of right now, we just have
14 figures we're throwing -- we're throwing them at a
15 dart board just hoping that they come in, with no
16 basic underlying data as to where these figures are
17 coming from. And that's our main concern.
18 MR. STERN: I wouldn't say that's
19 totally correct from the debtor's perspective. I
20 think what's important for you to understand is that
21 Ms. Alicea and the bank representative are now
22 communicating directly, and we haven't been involved
23 in that process. They can continue to communicate
24 directly.
25 I'm sure that she will continue to try

Case 18-14064   Doc 138   Filed 05/17/19   Entered 05/17/19 14:43:18   Desc Main
Document      Page 12 of 20

12

1  to do her best to supply all of the requested
2  information because she has up to this date.
3            THE COURT:  When was the request for
4  the information made?
5            MR. MORAN:  March 20.
6            THE COURT:  March 20.  Has she been
7  gone this whole time?
8            MR. QUAID:  She's been gone for seven
9  days, Your Honor.
10           MR. STERN:  Apparently.
11           THE COURT:  Okay.  So right about the
12 time she was leaving.
13           MR. STERN:  Apparently.
14           THE COURT:  Well, she shouldn't just
15 be continuing to try.  She has an obligation to
16 produce the information.  I expect her to produce the
17 information.  I don't think it's necessarily a useful
18 purpose to just set this for a week or two.  I am
19 ordering her to provide the information.  She's
20 required to do it.  I'll strike out the word agreed
21 so there's no misunderstanding here.
22           MR. STERN:  Thank you.
23           THE COURT:  I am going to enter the
24 cash collateral order that takes us through
25 April 24th, but --

```
 1                 MR. STERN:  April 30th.
 2                 THE COURT:  Well, it takes us through
 3   April 30th.  We're back on April 24th.
 4                 MR. STERN:  That's right.
 5                 THE COURT:  Don't come back on
 6   April 24th and say the same thing over again.  If
 7   this is going on, then I want you to take some
 8   action.  I don't want you to --
 9                 MR. MORAN:  Yes.
10                 THE COURT:  -- be kind of half in and
11   half out.
12                 MR. MORAN:  I understand, Your Honor,
13   and we will do that.
14                 THE COURT:  So I'll sign this.
15                 And today is what?
16                 MR. STERN:  The 27th.
17                 THE COURT:  Okay.  So you've got cash
18   collateral through the end of April.
19                 MR. STERN:  Thank you.
20                 THE COURT:  All right, next?
21                 MR. STERN:  All other matters
22   continued until April 24th.
23                 THE COURT:  Okay.  So, the
24   individual -- the adversary McMahan-Clemis, the
25   adversary against the bank then, just carry that on
```

1  the same date?
2              MR. STERN:  Yes.
3              THE COURT:  Which is 4/24.
4              Okay.  Then what am I supposed to do
5  now with the two fee requests and two objections on
6  SAK?
7              MR. STERN:  Nothing at the moment.
8              THE COURT:  Okay.  I shouldn't review
9  them?  You're going to talk?  I mean, I think the way
10 the order works is if there is an objection, then we
11 set a hearing.
12             MR. QUAID:  Either party can come in
13 and request a hearing and request whatever relief
14 they deem appropriate.
15             THE COURT:  Right.
16             MR. QUAID:  Neither party has chosen
17 to do that.
18             THE COURT:  Okay.  That's what I
19 wanted to know.
20             MR. STERN:  So if one of those parties
21 do, then we'll bring that to issue.  And we'll be
22 resolving that also somewhat through the plan.  I
23 mean, the plan will provide standard language for the
24 payment of administrative fees on the effective date
25 or...

1                THE COURT:  Okay.  Then what I'm going
2    to do is I'll just put them aside, no more hearing
3    date.  You'll ask me if you need a hearing date,
4    you'll ask me if you want me to rule on them.
5                MR. STERN:  Yes, ma'am.
6                THE COURT:  Okay.  That works.
7                MR. STERN:  Thank you.
8                THE COURT:  All right.
9                MR. STERN:  Thank you, Your Honor.
10               THE CLERK:  Judge, there's one other
11   matter.  It's at the beginning.  It's number 7 on the
12   call.
13               THE COURT:  Okay.  So, that is U.S.
14   Bank's motion.
15               MS. BHOOPAL:  Yes, Your Honor.  We're
16   just seeking relief from the automatic stay.  This is
17   a property it's not the debtor's residence.  It's
18   property in Colorado.
19               THE COURT:  Right.  There was an issue
20   about not knowing -- somebody not knowing there was
21   property in Colorado.  I think it was Mr. Springer.
22               MR. GUZZARDO:  Yes, Your Honor.  And
23   as you know from our discovery issues that we
24   discussed a week ago, we still do not have any
25   information about this Colorado property or any other

1  properties that the Trinity entities hold.
2              Oh, as you may be aware, we did file a
3  proposed order yesterday with respect to -- I did.
4  It's on the docket, just so you know.
5              THE COURT:  Okay.
6              MR. GUZZARDO:  I would ask -- and
7  I understand there will be frustration on this.
8  It is a second lien.  There appears to be equity.
9  They appear to be adequately protected.  I would
10 request that we enter and continue this matter until
11 I understand who owns this property, who has the loan
12 on it, where the funds came from to purchase it, and
13 whether really it's part of the doctor's estate.
14             THE COURT:  Mr. Cohen, can you
15 enlighten us at all?
16             MR. COHEN:  Sure.  The property is not
17 owned by Dr. McMahan.  The property is owned by one
18 of the Trinity entities.  I believe those Trinity
19 entities are owned by Lynn McMahan, which is part of
20 why they're trying to take her deposition.
21             There is equity in those properties.
22 If at one point the trustee avoided any -- if it ever
23 was in his name, which I don't think it was, but if
24 there was a transfer, and they avoided that transfer,
25 then the property would come back into the estate,

1 there would be equity and the trustee would sell
2 it.
3              So, I think they need to get their
4 due diligence done.  I mean, these -- you know, Your
5 Honor, these are deeds.  Look at the recorder's
6 office whatever county it's in, look and see who
7 bought the property.  Even without Lynn's testimony,
8 you can do that.  That's something a trustee can do.
9 And look at it and see who bought the property, who
10 took out the mortgage.
11              THE COURT:  Right.
12              MR. GUZZARDO:  And the problem is Dr.
13 McMahan is on the note or the mortgage.
14              MR. COHEN:  But that's -- sometimes
15 that's a red herring.  He's on everything.  He
16 was --
17              THE COURT:  Well, which is why one
18 might presume it's really his property.
19              MR. COHEN:  Well, what happened was is
20 that -- in most of these properties it was his
21 financial income that allowed the lender to make
22 those loans.  So I'm assuming, just assuming, that's
23 why he's on everything.  But as to the ownership of
24 the property, it's easily ascertain --
25              MR. GUZZARDO:  And then that leads to

1  the question is it really just an alter ego --
2              THE COURT:  Exactly.
3              MR. GUZZARDO:  -- yes.
4              THE COURT:  Exactly.  And I have
5  said before and I will say it again, if Lynn McMahan
6  does not cooperate, there will be no discharge for
7  Dr. McMahan.  And I do want that to be investigated.
8              MR. COHEN:  Your Honor, I have to take
9  issue with that somewhat.
10             THE COURT:  Fine.  Take all the issue
11 you want with it.  I'm telling you that what's going
12 on here.
13             MR. COHEN:  I mean, he --
14             THE COURT:  You don't have to say
15 another word.
16             MR. COHEN:  Okay.  I'd like to.
17             THE COURT:  Do you have adequate
18 protection?
19             MS. BHOOPAL:  It appears we may be
20 protected.  I'm not entirely sure what the value of
21 the property is.  But if the trustee is looking for
22 another date, I'm certainly not opposed.
23             THE COURT:  Yeah, I think we need to
24 give the trustee some time here because this is one
25 big mess.

19

1                     How much time do you need?
2                     MR. GUZZARDO:  I mean, if --
3                     THE COURT:  We're going to be back on
4    the 24th of April.
5                     MR. GUZZARDO:  We're going to be back
6    on the 24th of April.  I would presume the way things
7    are going, I'm going to have a motion to compel and
8    then have a rule to show cause.  And I still need
9    to -- you know, I imagine I'm going to be able to
10   serve Ms. Brown with the motion to compel and the
11   rule to show cause.  I don't know whether I'll be
12   able to find Lynn -- Ms. McMahan.
13                    THE COURT:  Oh, you mean --
14                    MR. COHEN:  Your Honor, maybe it makes
15   more sense to put this over with the Lynn McMahan
16   stuff, rather than the corporate stuff.
17                    THE COURT:  And when is that up?
18                    MR. COHEN:  I'm not sure, but --
19   because that's really -- doesn't --
20                    THE COURT:  The next date for that is
21   April 27th.
22                    MR. COHEN:  That makes more sense.
23                    THE COURT:  Motion to compel.
24                    THE CLERK:  The motion to compel.
25                    MR. GUZZARDO:  Oh, the motion to

1 compel, that's fine.

2         THE COURT: Okay.

3         MR. GUZZARDO: And the other thing is
4 I can speak with counsel and perhaps -- in order so
5 that she doesn't have to keep coming back, I can
6 discuss it with her and try to be as efficient as
7 possible.

8         THE COURT: Okay. So April 17th on
9 that one then.

10         All right. I think that takes care of
11 everything.

12         (Which were all the proceedings had in
13         the above-entitled cause, March 27,
14         2019, 10:00 a.m.)

15 I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
THAT THE FOREGOING IS A TRUE AND ACCURATE
16 TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
ENTITLED CAUSE.