IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John T. McMahan, | ) | No. 18 B 14064 |
| | ) | Chicago, Illinois |
| | ) | 2:00 p.m. |
| Debtor. | ) | December 28, 2022 |

TRANSCRIPT OF PROCEEDINGS HELD VIA ZOOM BEFORE THE
HONORABLE JANET S. BAER

APPEARANCES:

Chapter 7 Trustee:          Mr. Thomas Springer;

For the Trustee:            Mr. Nathan Delman;

For U.S. Bank National
Association:                Mr. David Hall;

For Trinity Green:          Mr. Robert Shelist;

Court Reporter:             Amy Doolin, CSR, RPR
                            U.S. Courthouse
                            219 South Dearborn
                            Room 661
                            Chicago, IL  60604.

2

1              THE CLERK:  Taking up this court's

2      2:00 o'clock matters, McMahan, and it's related

3      adversary.

4              THE COURT:  All right.  Good

5      afternoon, everybody.  Can I have appearances,

6      please.

7              MR. SPRINGER:  Good morning, Your

8      Honor.  Tom Springer, trustee.

9              MR. DELMAN:  Good afternoon, Your

10     Honor.  Nate Delman on behalf of Tom Springer, the

11     Chapter 7 trustee.

12             MR. SHELIST:  Good afternoon, Your

13     Honor.  Robert Shelist on behalf of the Trinity

14     entities.

15             MR. HALL:  Good afternoon, Your Honor.

16     David Hall on behalf of U.S. Bank.

17             THE COURT:  And do we have Dr. McMahan

18     or Mrs. McMahan on today?

19             MR. SHELIST:  I am not aware whether

20     or not they plan to attend.  I have not spoken with

21     them since last week's hearing.

22             THE COURT:  Okay.  Do we any unknown

23     numbers?

24             THE CLERK:  No.

25             THE COURT:  Okay.  We don't currently

3

1   show either of them are attending.

2            All right.  There are two purposes

3   really for this matter today.  Number one, I did rule

4   on the trustee's motion to sell the Colorado property

5   last week Friday.  I also ruled on the Trinity Green

6   motion to set aside -- or, I'm sorry, the Trinity

7   Green motion to reimpose the automatic stay.  Today

8   my plan is to put on the record an oral ruling

9   outlining the reasons for -- outlining what happened

10  and the reasons for my rulings.  I don't expect any

11  argument or discussion on that.

12           The other thing, however, we do have

13  to talk about is the Peyton property.  There is a

14  pending motion on the Peyton property, and we don't

15  have it currently scheduled.  There is schedule by

16  date -- I'm sorry, there is also then in addition to

17  the Peyton ruling -- which I think has been fully

18  briefed -- there's also then the motion to set aside

19  the summary judgments on the three properties,

20  Colorado, Peyton and Damen.  That one, there is a

21  reply brief due on February 1st, and we don't have a

22  date for that right now either.

23           So once I'm done putting the oral

24  ruling on the record with respect to the matters that

25  were up on the 23rd of December, we'll have a

1  discussion about that.

2            So with that, here are my subsequent

3  notes and comments with respect to the hearing on the

4  23rd.  This is really an oral ruling in furtherance

5  of the rulings that were made by the court on

6  December 23rd regarding the November 15, 2022, motion

7  of the Chapter 7 trustee to approve the sale of

8  certain Colorado property to a purchaser for what

9  after adjustments is $3.9 million.  That motion was

10  at docket number 330.

11            After extensive arguments and

12  objections and two evidentiary hearings, the court

13  granted the trustee's motion.  In granting the

14  trustee's motion, the court also considered two other

15  pending motions relevant to the matter.

16            Those motions were, number one, the

17  motion of Trinity Green Colorado to reinstate the

18  automatic stay on the Colorado property against U.S.

19  Bank.  That's at docket number 358, which was filed

20  on December 22nd, 2022 -- actually, part of it -- it

21  was filed in December 21st, and then subsequently

22  withdrawn and refiled on the 22th because of some

23  procedural errors.

24            It was objected to by U.S. Bank on

25  December 22, 2022, and noticed for hearing on

1   December 23rd, 2022.  At issue was the Section 362

2   automatic stay which was modified as to U.S. Bank on

3   January 29th, 2020, on its first loan to the debtor,

4   and August 26th, 2022, on its second loan to the

5   debtor.

6            The other motion that was relevant to

7   the proceedings with respect to the sale of the

8   Colorado property was the motion of Trinity Green

9   Colorado to vacate, which is docket number 78, the

10  order entered on February 7, 2022, granting summary

11  judgment by default against Trinity Green Colorado --

12  that order was at docket 69 -- on the trustee's

13  adversary proceeding wherein the court found that the

14  transfer of the Colorado property from the debtor to

15  Trinity Green was a fraudulent transfer.

16           The transfer was avoided and all

17  interest in the Colorado property was returned to the

18  debtor's Chapter 7 estate.

19           Pursuant to Trinity Green's request,

20  its reply brief regarding this motion is not due

21  until February 1st, 2023.  Trinity Green's counsel

22  indicated he needed considerable time to gather the

23  relevant factual support for its motion regarding

24  Mrs. McMahan's medical problems and condition which

25  form the primary support for the motion to vacate

1   under Federal Rule of Civil Procedure 60(b).

2            The issues before the court on the

3   motion to sell essentially include the following:

4   The integrity of the sales process for the Colorado

5   property; the purchase price, which the trustee was

6   urging the court to accept after adjustments; the

7   inspector's report which the prospective purchaser

8   obtained for the property, and its impact on the

9   purchase price adjustment being requested by the

10  purchaser; and, finally further discussions with the

11  potential purchaser and other parties who made bids

12  to purchase the property.

13           The pertinent facts regarding the sale

14  are as follow:  The trustee's process to sell the

15  Colorado property began in earnest on August 9th,

16  2022, when the trustee filed a motion to employ a

17  broker.  No objections were filed to that motion, and

18  it was approved on August 17th, 2022.  The debtor and

19  Mrs. McMahan did not get involved in the trustee's

20  sale effort until late September of 2022 when the

21  trustee's broker discovered that someone was living

22  in the Colorado property, and it turned out that

23  someone was the McMahans.

24           Upon that discovery, the trustee filed

25  a motion to evict the debtor and Mrs. McMahan from

1  the property.  That is at docket number 280.  The

2  McMahans strenuously objected to the eviction, and in

3  the process also questioned the qualifications of the

4  broker who had been hired by the trustee and approved

5  by the court.  But by that time, it was already

6  almost two months after the broker had been hired,

7  and, more importantly, the trustee had only until

8  December of 2022 to get U.S. Bank paid off before the

9  bank's foreclosure sale could be completed.

10         The bank had several foreclosure sales

11  set in this process, and the trustee successfully

12  negotiated with the bank, U.S Bank, to get until the

13  end of December to potentially get the property sold

14  and the mortgages paid off.

15         On October 11, 2022, an extensive

16  hearing was held regarding the eviction of the

17  McMahans and the listing for sale of the Colorado

18  property.  The trustee put on testimony from the

19  Colorado -- from the real estate broker, Ryan

20  Anderson, regarding the discovery of the McMahans

21  residing in the Colorado property, their delivery of

22  the eviction notice, and his attempts to view the

23  property for purposes of its listing and sale.

24         Mrs. McMahan, who is the manager and

25  the sole equity interest holder of Trinity Green

8

Colorado, and who she has indicated developed the
property, participated in the hearing representing
herself.  Mrs. McMahan was permitted to cross-examine
Mr. Anderson at length, as well as argue her
objections to the eviction request, as well as the
trustee's retention of Mr. Anderson as the broker.

She argued that she did not believe
the trustee's real estate agent was qualified to sell
the property.  She also stated numerous times that
she had a cash buyer who was willing to pay
approximately 6 to $6.7 million for the property and
close before Christmas, and if given a week she would
have a written offer to purchase the property from
that buyer to present to the court.

As a result of the October 11th
evidentiary hearing, the court entered an order at
docket 303 which in pertinent part contained the
following provisions.  First, it permitted Mrs.
McMahan and the debtor the opportunity to submit to
the court through debtor's counsel by no later than
October 24th any and all current offers, contracts,
listing agreements, photographs, and other documents
they had that pertained to the property and the
current sale of the property, including current
market evaluations and/or appraisals of the property

1  that provided information about the appropriate

2  listing price for the property.

3            The order stated that if the debtor or

4  Mrs. McMahan did not provide the trustee or the court

5  on or before October 25th, 2022, an acceptable signed

6  contract to purchase the property, then starting on

7  October 26, 2022, the trustee's real estate broker

8  could list the property for sale.

9            The order also provided that in the

10 event the debtor and Mrs. McMahan sought to challenge

11 the qualifications of the trustee's real estate

12 broker and request that the court permit the hiring

13 of a different real estate broker to sell the

14 property, they must file no later than October 21,

15 2022, a motion requesting that relief with a draft

16 listing agreement, along with a resume and other

17 information about their chosen real estate broker,

18 indicating why that agent was better qualified than

19 the trustee's real estate broker to list the

20 property.

21            As a result of the October 12, 2022,

22 order, the debtor and Mrs. McMahan provided the court

23 through debtor's counsel with a few documents that

24 ultimately were never introduced into evidence.

25 Those documents consisted of some photos of the

1  property, a printout from the MLS listing service

2  regarding property listings in Cordillera, Colorado,

3  an email about someone interested in viewing the

4  property, an email regarding the qualifications of

5  real estate broker Pamela Horan-Kates, and a custom

6  market plan from an unknown source.  However, no

7  offers, contracts, current market evaluations and/or

8  appraisals of the property were provided.

9           On October 19th, 2022, debtor's,

10  counsel, Penelope Bach, filed a motion to withdraw as

11  counsel for the debtor at docket 308.

12           Despite filing that motion to

13  withdraw, however, on October 21st, 2022, Ms. Bach

14  did file a motion on behalf of the debtor and

15  Mrs. McMahan to remove the trustee's real estate

16  broker and employ real estate broker Pamela

17  Horan-Kates.  That's at docket 310.  Attached to the

18  motion was an exclusive listing agreement listing the

19  property at a price of $5,250,000.

20           On October 25th, 2022, the court held

21  a hearing on the trustee's motion to evict,

22  compliance with October 12th, 2022, order, and the

23  debtor and Mrs. McMahan's motion to remove the

24  trustee's real estate broker and employ Ms.

25  Horan-Kates.

1          After extensive argument, the court

2   denied the debtor and Mrs. McMahan's motion.  The

3   court did grant Ms. Bach's motion to withdraw as

4   counsel for the debtor.

5          After the October 25th, 2022, hearing,

6   the trustee's real estate broker moved forward to

7   list the property for sale and show the property to

8   prospective buyers.

9          On November 15, 2022, the trustee

10  filed a sale motion, which is the subject of this

11  ruling.

12          On December 12th, 2022, a four-hour

13  evidentiary hearing was commenced so that the court

14  could determine whether it should approve the sale of

15  the property pursuant to the trustee's sale motion.

16          At the hearing, the trustee argued

17  that it was in the best interest of the estate to

18  approve the sale.  In support of the motion, the

19  trustee offered the testimony of its real estate

20  broker, Ryan Anderson.  The trustee questioned Mr.

21  Anderson extensively, as did counsel for Trinity

22  Green.

23          In addition, the court permitted Mrs.

24  McMahan, who was representing herself pro se, to also

25  question Mr. Anderson.

1          Mr. Anderson's testimony, including

2   cross-examination from counsel for Trinity Green

3   Colorado, as well as Mrs. McMahan, lasted for almost

4   the entire four hours of the hearing.  Mr. Anderson

5   testified regarding the rationale behind the listing

6   price selected for the property, the sales process,

7   the offers received, the negotiations among the

8   parties to provide written offers to purchase the

9   property, the viewing of the property, the inspection

10  report received by the prospective buyer, and the

11  discussions and negotiations subsequent to the

12  receipt of the inspection report and the requested

13  purchase price adjustments of the buyer.

14          In pretrial materials, the trustee

15  also indicated that he intended to offer the

16  testimony of the property inspector for the buyer in

17  support of the trustee's position that the sale to

18  the buyer showed substantial reductions should be

19  approved.

20          Trinity Green indicated that it would

21  likely call Mrs. McMahan to testify in support of

22  Trinity Green and her objections to the trustee's

23  sale motion.  Trinity Green also indicated that it

24  wanted to cross-examine the property inspector.

25          At the conclusion of the hearing on

1 December 12th, 2022, in discussing when a continued

2 evidentiary hearing would take place, Trinity Green's

3 counsel indicated that he was not available to

4 conclude the hearing before the end of December or

5 the first week of January due to extensive

6 professional commitments.

7 The court observed that while it was

8 sympathetic, there was a serious issue due to the

9 pending U.S. Bank foreclosure and the long-standing

10 modification of the stay against the Colorado

11 property.  Ultimately the hearing concluded for the

12 day with the court directing that the parties attempt

13 to work together to see if they could obtain any

14 delay from U.S. Bank regarding the deadline.  The

15 court also indicated that it had serious concerns

16 about the substantial reductions to the purchase

17 price being requested by the buyer.

18 The court continued the hearing for

19 status to December 19th, 2022, to see what progress

20 the parties could make in coming up with a process by

21 which these hearings could conclude, an extension of

22 the stay could be obtained by U.S. Bank and/or the

23 buyer might be willing to increase his purchase

24 price.

25 On December 18th, 2022, the trustee

1  filed a supplement in support of his motion to

2  approve the sale of the property at docket 253.  In

3  that supplement, the trustee indicated and argued the

4  following:  Trustee believes that the sale of the

5  property was reasonable under the circumstances.

6           After the December 12th, 2022, hearing

7  trustee went back to the prospective buyer and

8  obtained a $100,000 increase of the purchase price to

9  3.9 million.  The trustee believes that the $3.9

10  million purchase price is the highest the market will

11  provide for the property, and it would be imprudent

12  not to approve the sale.

13           The objectors to the sale have to

14  overcome the trustee's business judgment to which the

15  court must give deference with respect to Section 363

16  of the Bankruptcy Code.  Anything short of an

17  objectively superior offer is insufficient evidence

18  to overcome the trustee's business judgment.

19           U.S. Bank has agreed to extend to

20  January 6th, 2023, but no longer, the time the

21  trustee may have to sell the property.  And it's

22  continued its sheriff's foreclosure sale to

23  January 11th, 2023.

24           The objectors have not moved the court

25  to stay the proposed sale or indicated any

1  willingness to post a supersedeas bond to protect the

2  estate against loss if the litigation of the sale

3  would otherwise continue, and, finally, he argued the

4  objectors lack standing to challenge the sale motion

5  in that they have no direct pecuniary interest in the

6  bankruptcy case.

7           On December 19th, 2022, the parties

8  appeared for status on the continued sale motion.

9  Counsel for Trinity Green once again expressed his

10 scheduling issues with continuing the evidentiary

11 hearing.  However, he requested the court reimpose

12 the automatic stay as to U.S. Bank until the end of

13 January so that he would be available to continue the

14 hearing, and so that Mrs. McMahan would have the

15 opportunity to present to the court a buyer willing

16 to pay substantially more for the Colorado property

17 than the current offer.

18           In support of his oral motion to

19 reimpose the stay, Trinity Green's counsel cited to

20 the case of In re Lois J. Bailey, 111 B.R. 151, a

21 Western District of Tennessee District Court case

22 from 1988, a Chapter 13 case.  And Trinity Green's

23 counsel argued that the court had the authority under

24 that case law to reimpose the automatic stay.

25           The trustee objected to Trinity

1  Green's oral request arguing many of the points

2  outlined in his supplement.  Also in support of the

3  trustee's argument that approving the sale was

4  reasonable under the circumstances, he argued that if

5  the court did not approve the sale, the buyer would

6  be lost, and there would be no guarantees that

7  ultimately there would be a better offer forthcoming,

8  and the carrying costs for the property make every

9  day that passes more and more expensive for the

10  estate and, thus, reducing what will be available to

11  pay creditors of the debtor's estate.

12          As a result, at the December 19th

13  hearing, the trustee argued that no further evidence

14  was required and in his business judgment he was

15  recommending that the court approve the sale of the

16  Colorado property to the buyer for the sum of $3.9

17  million.

18          The court agrees with the trustee that

19  it must give the trustee's business judgment

20  significant deference in deciding whether to approve

21  the sale.  However, the court has indicated that it's

22  troubled by the substantial discount that the buyer

23  was asking for regarding the sale due to the

24  inspection report.  Thus, the court indicated that it

25  needed to hear testimony from the trustee regarding

1  his review of the inspection report, his further

2  discussions with the buyer regarding the discount,

3  the buyer's willingness to proceed with the sale, and

4  the trustee's and broker's discussions with other

5  potential buyers who had provided offers.

6            Counsel for Trinity Green indicated

7  that it still wished to get testimony from and

8  cross-examine the inspector regarding his inspection

9  report and the likely costs of remedying the issues

10  identified by the inspector.

11            Counsel also indicated that he wished

12  to call Mrs. McMahan as a witness to testify

13  regarding her expertise as a real estate developer

14  and her expertise regarding the Colorado property.

15            The court indicated that it understood

16  what the parties had intended with regard to the sale

17  hearing process and its expectations that the

18  inspector and Mrs. McMahan would testify.  However,

19  the court observed that counsel for Trinity Green

20  said it did not have the availability to prepare for

21  and complete that hearing before the end of the year

22  when the sale contract called for the buyer to close

23  the sale on December 29th, and the stay extension

24  from U.S. Bank expired on January 7.

25            Further, the court also notes that

1  while Mrs. McMahan has not officially testified in

2  these matters, she has spent extensive time during

3  the course of her arguments and purported

4  cross-examination of the witnesses in this case

5  describing her qualifications, her expertise as a

6  real estate developer, her knowledge of the real

7  estate market in the area the property is located,

8  her involvement in the development of the Colorado

9  property, and her opinion regarding the property's

10 value.

11          The trustee requested the court to

12 confirm the sale recommended by the trustee before

13 the sale was lost and the foreclosure occurred or a

14 substantial harm could come to the estate.  As a

15 result, the court set a further and timed evidentiary

16 hearing for December 23rd, 2022, at 1:00 p.m. to

17 conclude the matter.  The court indicated that the

18 trustee would have one hour to testify in support of

19 his request to approve the sale, Trinity Green and

20 the McMahans would have one hour total to

21 cross-examine the trustee, and one hour would be

22 available for the court's questions, redirect and

23 recross, arguments and summation.

24          The continued evidentiary hearing took

25 place on December 23rd, 2022.  The trustee testified

1   for approximately an hour.

2                   Trinity Green's counsel cross-examined

3   the trustee for approximately 45 minutes.  The court

4   permitted Mrs. McMahan to cross-examine the trustee

5   for approximately 30 minutes, during which Mrs.

6   McMahan again made extensive arguments and

7   objections.

8                   And then the court asked its

9   questions, a short redirect took place, further

10  argument, objections and allegations were made by the

11  McMahans, and the parties made summations before the

12  court ruled.

13                  In his sale motion, the trustee sought

14  approval of the sale of the Colorado property for the

15  now adjusted purchase price of $3.9 million.  In

16  seeking that approval, the burden was on the trustee

17  to prove that the sale process was adequate, the $3.9

18  million was an appropriate purchase price for the

19  property, and a sale at that amount to this buyer was

20  in the best interest of the estate.

21                  In order to meet that burden, the

22  trustee had to take into consideration certain

23  salient facts that arose in this situation.  Those

24  included the following:

25                  The original offer to purchase the

1  property was for the list price of $4.35 million.

2  The debtor and Mrs. McMahan have indicated that the

3  property was worth over $1 million more than the list

4  price;

5            The debtor and Mrs. McMahan argued

6  vehemently and often the last two months that the

7  sale process was not run well;

8            The adjustments being requested by the

9  buyer to the purchase price as a result of the

10  inspection report and other issues are for

11  approximately $450,000;

12            Mrs. McMahan, who again has indicated

13  on numerous occasions that she is an experienced real

14  estate developer and is intimately familiar with this

15  property, having supervised its development,

16  construction and design, has stated on numerous

17  occasions that if she was given the appropriate

18  amount of time and selection of her own broker she

19  could obtain a purchase price for the property far in

20  excess of $3.9 million.

21            In requesting approval of the sale,

22  the trustee again reminded everyone that the bank

23  would foreclose on the property in early January if

24  the sale was not approved.  The trustee testified

25  that in his extensive experience, if the property

1  went to a foreclosure sale, the ultimate sales price

2  would be less than what this sale would bring.

3          The trustee also testified that the

4  sale process was run well, was fair, adequate and

5  reasonable under the time frame that he had to sell

6  the property; the McMahans' lack of cooperation in

7  making the property available for inspection by the

8  broker and prospective purchasers and fighting the

9  sale process caused the sale process to be more

10 compressed than it otherwise may have had to be.

11         The market has spoken regarding the

12 correct sales price under the circumstances.  The

13 trustee does not have any other current prospective

14 purchasers for the property willing to pay more for

15 this property or proceed at even the same price than

16 this buyer.  There is no time to conduct any further

17 sales process given the impending foreclosure, and no

18 actual evidence or superior offer has been presented

19 to the court for the purchase of the property for

20 more than $3.9 million.

21         And if the property goes to a

22 foreclosure sale, the current buyer may very well bid

23 for the property at the foreclosure sale and likely

24 obtain it for less than the $3.9 million.  Thus, the

25 trustee opined that in his reasonable business

1   judgment as a fiduciary of the estate he believed

2   that a $3.9 million purchase price for the property

3   is reasonable and must be approved before December

4   29th or the estate could be substantially harmed.

5            Now, there's certain additional

6   information I think is relevant to these proceedings

7   that I need to talk about.  In reviewing the matters

8   before the court in this very long and difficult

9   case, the court has to make note of a few of these

10  significant factors.

11           First, Mrs. McMahan's health.  Mrs.

12  McMahan is the manager and sole equity holder of the

13  Trinity Green entities.  During the course of these

14  last five years since the debtor filed his Chapter 7

15  case, Mrs. McMahan has participated extensively in

16  this case.

17           However, at the same time, as per

18  counsel for Trinity Green, as stated in his Rule

19  60(b) motion, as well as Mrs. McMahan's own

20  representations to the court on numerous occasions,

21  Mrs. McMahan has had a myriad of health issues that

22  she alleges have rendered her unavailable at times to

23  participate in this case on a consistent basis.

24  These include a 2019 heart attack; the subsequent

25  need for cardiac rehabilitation; a stroke in 2020;

1 Addison's disease; Cushing's disease; two bouts of

2 very serious COVID-19, one in November 2020, and one

3 in the fall of 2022; a fall and concussion in the

4 fall of 2022; and a serious neurologic condition that

5 could cause permanent vision loss.

6           At the same time, between 2018 and

7 today's date, Mrs. McMahan and/or Trinity Green has

8 also had eight different lawyers representing them,

9 some for very short periods of time and some for

10 longer periods of time.  Each of those counsel who

11 filed appearances for Mrs. McMahan and/or Trinity

12 Green have ultimately sought permission to withdraw

13 as counsel.  In between counsel, Mrs. McMahan has

14 represented herself in these proceedings.

15           There is no doubt that both Mrs.

16 McMahan's health and the frequent change of counsel

17 has affected these proceedings.  However, despite all

18 of this, Mrs. McMahan has remarkably participated in

19 dozens and dozens of hearings, supplied several

20 counsel and the trustee with significant

21 documentation, been given the opportunity to speak on

22 her behalf in court on dozens of occasions, even when

23 represented by counsel, and actually has herself

24 cross-examined witnesses on several occasions.

25           Mrs. McMahan, however, is not an

1  attorney or an officer of the court, has never been

2  sworn as a witness in this matter, has never provided

3  a sworn statement on any issue, and has refused on

4  two separate occasions to permit the court to have

5  her sworn as a witness in order to question her.

6           All of this history was also taken

7  into account when the court made its ruling on these

8  matters.

9           Now with respect to the rulings,

10 first, as indicated, the stay was modified for U.S.

11 Bank with respect to its mortgages on the Colorado

12 property almost two years ago.  The court's authority

13 to set aside those orders modifying the stay under

14 the circumstances of this case is at the least very

15 questionable.

16           This is so in light of the substantial

17 notices given to the debtor and Trinity Green with

18 respect to U.S. Bank's request; the time that has

19 passed since the entry of the orders modifying the

20 stay; and the extensive involvement of the debtor,

21 Mrs. McMahan and Trinity Green in every aspect of the

22 cases between September 2018 when the first motion to

23 modify the stay was filed and August 2020 when the

24 second stay modification order was entered.

25           U.S. Bank, in its objection to Trinity

1   Green's motion to reimpose the stay, outlined in

2   great detail the chronology of events regarding the

3   stay lift proceedings, subsequent proceedings, and

4   the legal issues implicated.

5                For all of the reasons stated in their

6   objections, as well as outlined by the court on

7   September 23rd, 2022, I concluded that I did not have

8   the authority to, could not and should not reimpose

9   the stay.  As a result, Trinity Green Colorado's

10   motion to reimpose stay is denied.

11              Second, with respect to the trustee's

12   motion to sell the property, the court has granted

13   that motion.  The court finds that under the

14   circumstances of this case, the trustee has met his

15   burden.  The trustee has done the best that he can to

16   fulfill his fiduciary duty and has appropriately

17   exercised his reasonable business judgment.

18              The specific and unique circumstances

19   of this case which had to be dealt with included in

20   pertinent part the following:  The time clock running

21   because of the U.S. Bank foreclosure; the lack of

22   cooperation in the sales process by the McMahans; the

23   substantial efforts that the trustee and his broker

24   have had to make to get the property listed and shown

25   to prospective buyers; the inspection report that was

1  obtained by the purchaser and adjustments to the

2  purchase price demanded; the further inquiries and

3  negotiations conducted by the trustee and his broker

4  with respect to the sales price; the lack of any hard

5  evidence of other purchasers willing to pay more for

6  the property; the realities present when a property

7  is facing foreclosure and being sold by a bankruptcy

8  trustee; the carrying costs to the estate that

9  continue to accrue while the property is held; and

10  the deference that the court must give a bankruptcy

11  trustee under these circumstances.  As a result, the

12  trustee's burden is met, and the trustee's

13  recommendations to accept this sale were well taken

14  and the sale was approved.

15           This constitutes a further ruling of

16  the court on the issues.  The court reporter will be

17  directed to prepare a transcript of this ruling and

18  place it on the docket to serve as a further record

19  of the court's ruling.  And that concludes the matter

20  with respect to the Colorado property for today.

21           Now, we need to take up Peyton because

22  we don't currently have a date by which to hear and

23  see whether or not we're going to approve the Peyton

24  sale.  In that respect, I do believe it's fully

25  briefed, but I do believe there are evidentiary

1  issues.

2            And as argued by Mr. Shelist, this is

3  not an emergency in the sense that there is no

4  pending foreclosure.  The only issues really have to

5  do with whether or not this buyer could be lost, and

6  if so, the estate would be harmed as a result of

7  that.  And this is a situation where we have not had

8  a chance to have argument or hear evidence.  And so

9  we need to set a time to do so.

10            I don't know, Mr. Delman, Mr.

11  Springer, what exactly you're going to say vis-a-vis

12  the buyer, but I do know that Mr. Shelist's schedule

13  is just that I don't think he's available to have any

14  sort of evidence presented in this case, if it needs

15  to be, until at least I think the second week of

16  January.

17            What is the current status of this

18  potential sale with the buyer?

19            MR. SPRINGER:  Your Honor, Tom

20  Springer, trustee.  The buyer is hanging in there.

21  This is a property that she has a specific desire to

22  purchase as it fits her needs for a special needs

23  child, so she's sticking with it.  The liens have

24  been paid and the utilities brought up to speed with

25  the city of Geneva, Your Honor.  But I didn't want to

1 | have water on, nor electric or gas until the sale was

2 | approved, because, again, that's carrying costs that

3 | the estate needs to bear, and I also needed to

4 | winterize it.

5 | So it's ready to be switched on in

6 | this case as far as having utilities run to it.  And

7 | the liens are current, paid off, and the buyer is

8 | still there.  So, again, there's no emergency like

9 | there was in Red Draw vis-a-vis the foreclosure sale.

10 | But, of course, we'd like to get it sold as soon as

11 | possible, and I press for the approval of the

12 | proposed buyer.

13 | THE COURT:  Mr. Springer, it looked to

14 | me, from what I saw -- and, again, we haven't had any

15 | evidence in this, but from what I observed it looks

16 | as though there's a lot of work that has to be done

17 | on this property before anybody can move in.

18 | Obviously, we're at the end of December, so I would

19 | not anticipate that that work would generally begin

20 | for a while.  Am I right on that?

21 | MR. SPRINGER:  That is exactly

22 | correct, Judge.  I have been in there a number of

23 | times.  It's unlivable.  So, the buyer is

24 | contemplating that.  She knows there's quite a bit of

25 | extensive rehab that's going to need to go into it to

1  bring it up to livable status.  She's not able to

2  affect the exterior because it's in a historical

3  district, but she does know that she has to

4  contemplate some amount of time and money to make it

5  livable.  So, right, that's, again, another reason

6  why I haven't had it switched on with respect to

7  utilities.

8              THE COURT:  Question for you further,

9  and that is, I know that the response from Mr.

10 Shelist is due vis-a-vis -- or, I'm sorry, the reply

11 was due on his motion to set aside the judgment on

12 February 1st.  You know, there are substantial issues

13 here in terms of whether or not it can be set aside,

14 especially given the amount of time that has passed.

15             Mr. Shelist -- well, first of all, Mr.

16 Springer, let's assume for a moment we could not

17 decide whether or not the sale should go forward

18 until sometime in February.  Are you going to lose

19 the buyer?

20             MR. SPRINGER:  I can't speak for her,

21 Your Honor, but I'm a lot -- I don't want to, but I'm

22 a lot more comfortable with this buyer and this time

23 frame than I was with the Red Draw, if I can equate

24 the two, but you kind of even can't.  But I don't --

25 I'd hate to tell you that I agree to that time frame,

1   and then she comes back and says I thought we were

2   going to have this done, you know, in December.  So,

3   I don't have a decent hard answer for you, Judge, but

4   that's the best I can offer the court at this point.

5               THE COURT:  And, Mr. Shelist, when I

6   reviewed your response, it seems to me, if I recall

7   correctly -- again, it's been a while because we've

8   been concentrating on Colorado -- that it's the

9   position of Trinity Green Peyton that they do not

10  believe that the purchase price for this property is

11  adequate.  I think the purchase price is $200,000, if

12  I recall correctly.

13              MR. SPRINGER:  That's correct, Judge.

14              THE COURT:  Is that correct, Mr.

15  Shelist?

16              You're on mute.

17              MR. SHELIST:  I apologize.  Yes, Your

18  Honor, that's correct.  We are challenging the

19  efficacy of the proposed purchase price.  That's one

20  thing we're contesting.  Obviously, we're also

21  seeking to set aside the summary judgment and final

22  orders.  In addition, there's going to be a fight

23  over whether or not the estate is entitled to any

24  money at all from this sale.  I have requested

25  informally copies of documents in the trustee's

1  possession for discovery purposes.  My request was

2  denied on the basis that the case was closed.  It's

3  very likely that I'm going to need to conduct

4  discovery in order to acquire all the documents that

5  I need.  At this point in time, I have not been given

6  the okay to do so.

7              THE COURT:  One second, Mr. Delman.

8              I'm assuming when you say that you

9  think you need discovery, is the discovery related to

10  the underlying substantive merits as to whether or

11  not this was a fraudulent conveyance that should have

12  been set aside?

13             MR. SHELIST:  That's correct, Your

14  Honor.  That's not urgently needed today, but that's

15  going to be an issue at some point in time.  I don't

16  believe that the trustee had any basis whatsoever in

17  fact or law for the complaint that was filed to

18  unwind this supposed fraudulent conveyance.

19             THE COURT:  But, Mr. Shelist, isn't

20  that a secondary issue?  I mean, the first issue is

21  whether or not under 60(b) I should be setting aside

22  the ruling.  And that really is number one, whether

23  or not you have some sort of excusable neglect, a

24  substantial basis for me setting aside the ruling,

25  and, number two, whether or not the ruling is based

1 appropriately on, I believe, the unanswered requests

2 to admit.

3         I mean, those are -- you know, one is

4 a legal issue and one is sort of a combined legal and

5 factual issue that I would need testimony about.

6 Isn't it really the case that until I decide whether

7 or not under 60(b) you've made your case it doesn't

8 matter about the underlying issue of whether or not

9 at the end of the day the fraudulent conveyance

10 should have been set aside?

11         MR. SHELIST:  I would agree with you

12 in part, Your Honor.  The trustee is asserting

13 standing to sell this property because he the order

14 has already been entered conveying title to the

15 trustee.  The question is whether there was ever a

16 basis for that to have been done and whether the

17 trustee has standing really to sell this property at

18 all.

19         THE COURT:  Well, again, I think

20 whether you have a basis to set it aside is sort of

21 beside the point unless you win on the 60(b) motion.

22 But, again, you know, that's why I wanted those

23 issues addressed in a reply, because as I look at it

24 right now, whether you would be a hundred percent

25 right that the interest should not have been set

1 aside, when this case came before the court with all

2 that was filed, the statement of uncontested facts,

3 the admissions and the like, whether or not from a

4 legal standpoint it was appropriate for the court to

5 enter the summary judgment order seems to be sort of

6 the first question.  And then, you know, the other

7 question has to do with whether or not now because of

8 what has happened I should set it aside.

9                    It's a little unclear to me whether or

10 not on the underlying merits of whether or not had

11 this not been a default it would have ultimately been

12 a successful summary judgment.  I think it may be a

13 secondary question, but that's truly something that I

14 need addressed in your reply brief.

15                    MR. SHELIST:  Yes, Your Honor.  There

16 are a number of issues before the court, not all of

17 which are ripe at this current moment.

18                    THE COURT:  Mr. Springer, I don't want

19 you to lose the buyer, but this one is messy.  You

20 know, it's a different circumstance.  The underlying

21 issues with respect to Colorado are very different.

22 And, obviously, the melting ice cube in Colorado is

23 what really caused the major need to go forward.

24                    But here I really would like to look

25 at the underlying 60(b) motion in the context of

34

1 whether or not the sale should go formed.  Obviously,

2 my concern is that you may lose the buyer.  But given

3 the condition of the property, I'm not sure that's

4 going to make much difference with a property that

5 needs to be drastically renovated before anybody

6 could move in.

7           So really on this one, unless you come

8 in with some evidence telling me why I shouldn't do

9 it, I'm inclined to let Mr. Shelist file his reply

10 brief by February 1st, and then letting me look at it

11 and set it for a status and potential evidentiary

12 hearing.

13           MR. SPRINGER:  Yeah, I get it, Judge.

14 I mean, I understand this is different.  All assets

15 are different.  All estates are different.  And this

16 is a different asset in a very different estate.

17           And we've had real good communication,

18 open lines of communication with this buyer.  She's

19 from Geneva.  It's for her son.  He's not yet 18.

20 She was going to have to spend the next year

21 rehabbing it.  So it's a different situation.  We'll

22 keep her on board as best as we can.

23           But I want the court to feel

24 comfortable, as I have this entire process.  That's

25 part of my duty and part of my job, Judge.  So I'll

1  get back to the buyer and get back to my broker and

2  we'll talk to her.

3                    THE COURT:  Okay.  I appreciate that.

4                    And with that, Mr. Shelist, your reply

5  brief is due on February 1st.  I'm going to set this

6  for status on February 8th.  At that time I will have

7  read all of the documentation so I can at least

8  determine whether or not we need to set an

9  evidentiary hearing promptly and decide the 60(b)

10  question or if we have a situation where it really is

11  in the best interest of the estate to get the

12  property sold and then decide the issue.  And, again,

13  a very different circumstance than the one we just

14  dealt with.  So we'll set the Peyton sale for status

15  on February 8th.

16                    And then the last thing that's before

17  us is in fact the three motions to set aside the

18  three summary judgments, Peyton, Colorado and Damen.

19  And once again, the reply briefs are due on February

20  1st.  So I'll put all three of those on status for

21  February 8th, and we'll try to figure out at that

22  time how to go forward.  Because, obviously, the

23  evidence with respect to 60(b) is the same on the

24  three.  The underlying facts related to these cases

25  are different, but the evidence with respect to why I

1   would set them aside is likely to be the same.

2                   MR. SHELIST:  What time were you

3   contemplating on February 8th, Your Honor?

4                   THE COURT:  February 8th my regular

5   motion call is at 10:00 o'clock a.m.  Will that work

6   for you?

7                   MR. SHELIST:  It does.

8                   THE COURT:  All right.  Then

9   February 8th at 10:00 a.m.  And that I think

10  concludes all the matters on the McMahan case for

11  today.

12                  (Which were all the proceedings had in

13                  the above-entitled cause, December 28,

14                  2022, 2:00 p.m.)

15  I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
    THAT THE FOREGOING IS A TRUE AND ACCURATE
16  TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
    ENTITLED CAUSE. /S/

17

18

19

20

21

22

23

24

25