**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| _____ | ) | Chapter 7 |
| In re: | ) | |
| | ) | |
| JOHN T. MCMAHAN, | ) | Case No. 18-14064 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Honorable Janet S. Baer |

**MOTION FOR LEAVE TO APPEAR AND FOR LEAVE TO SUE THE TRUSTEE
EITHER IN STATE COURT OR IN THIS ACTION**

NOW COME the adversary case Defendants, Trinity Green LLC, Trinity Green, LLC – 1240 N. Damen, Trinity Green  LLC – 509 Peyton and Trinity Green – Colorado, LLC, and movants Lynn McMahan and Trinity Development, Inc., an Illinois corporation, by and through their attorney, Robert J. Shelist of the Law Offices of Robert J. Shelist, P.C., and hereby move this Honorable Court for leave of the movants to appeal and for leave to file a lawsuit against the Trustee in State court.  Alternatively, they seek leave to file that lawsuit in this proceeding. In furtherance of this motion, the adversary case Defendants and movants state as follows:

**The Role of the Chapter 7 Bankruptcy Trustee**

1.    A bankruptcy trustee plays a vital role in a bankruptcy case and the trustee's administration of the estate is an essential feature of the case.  Section 323 of the Bankruptcy Code defines a trustee's role as the "representative of the estate."  The trustee has two main obligations: (1) "fiduciary" obligations owed to the "bankruptcy court and the parties in cases in which the trustee serves," and (2) "institutional" obligations, owed "to the bankruptcy process itself."  See Steven W. Rhodes, The Fiduciary and Institutional Obligations of a Chapter 7 Bankruptcy Trustee, 80 AM. BANKR. L.J. 147, 147–48 (2006).

2.     The bankruptcy trustee may be viewed as a sort of "court officer."  See Norton Bankr. L. & P. 3d § 28:1, Westlaw (database updated May 2023).  From this perspective, "a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code."  *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

3.     Furthermore, aside from the statutory duties, trustees have certain fiduciary duties that they must abide by, as "the legal representative and fiduciary of the estate."  When a trustee fails to adhere to either the statutory or fiduciary duties on behalf of the estate, there may be a cause of action against the trustee under a theory of personal liability.  Section 323 provides that the trustee has the capacity to sue and be sued.

4.     Here, it is alleged that the Trustee breached his fiduciary duties to the bankruptcy court and bankruptcy process, was grossly negligent and engaged in *ultra vires* practices, for the reasons set forth herein.

**A.     Adversary Case Number 20-00166 – Geneva, Illinois Real Property**

5.     With respect to the Geneva, Illinois real property (located at 509 Peyton, Geneva, Illinois), the subject of adversary case number 20-00166, the case filed by the Trustee completely lacked merit and was at all times frivolous, was factually insufficiently pled and resulted in relief that was not warranted by the facts.

6.     In the Trustee's Complaint in that adversary action (Doc. No. 1), it is alleged that title to the subject property was placed into a Chicago Title Land Trust Company Trust, Number

1103213, at some unknown date (Doc. No. 1, ¶ 18). [1]  Next, the Trustee alleged, but only on information and belief and without any actual basis in fact, that the debtor, John McMahan and his wife Lynn were "joint and equal beneficiaries of the Peyton Land Trust." (*Id*., ¶ 19.) [2]  Then, the Trustee alleged that the April 28, 2014 transfer of title from the Peyton Land Trust to Trinity Green, LLC–509 Peyton was a fraudulent transfer that should be rescinded with title returning into the land trust (*Id*., Counts I-III).

7.    As the evidence shows, there never was any basis in fact for the Trustee's "information and belief" allegations, in his Complaint, alleging that the debtor, John McMahan, had any beneficial interest in the land trust.  Instead, the Trustee's bald conclusions were not well-pleaded factual allegations at all.  Most importantly, the alleged facts turned out to be completely false.

8.    A subpoena for records was issued in this case by the Defendants' counsel to Chicago Title Land Trust Company.  The responsive documents to the subpoena from the land trust company were then disseminated to the Trustee, his counsel and to the Court.  Those documents incontrovertibly establish that the debtor *never* was a beneficiary of the Peyton land trust and never had any beneficial ownership of the Geneva property.

9.    To the contrary, the records establish that the beneficiary of the land trust was Trinity Development, Inc., an Illinois corporation (whose name was later changed to Trinity Development II, Inc.).  The debtor's wife, Lynn McMahan, in her individual capacity, has always been the President of that company.  Since there never was any ownership interest by the debtor in the

---

[1]    Remarkably, this pleading firmly establishes that the Trustee never bothered to research or check the title history of the Geneva property prior to filing the lawsuit.

[2]    Apparently, the Trustee never sought nor received records from Chicago Title Land Trust Company to determine whether or not the debtor was a beneficiary of the land trust or whether there was a colorable claim that could even be made for a fraudulent conveyance.

Geneva real property as well as no interest in the land trust, the Court's summary judgment order preserving the property and its value for the bankruptcy estate was entirely without any basis either in fact or law.

10.   The bottom line is that the Court's summary judgment ruling in adversary case 20-00166, entered on February 7, 2022, in favor of the Trustee (Doc. No. 68) as well as the final judgment, were erroneous.

11.   The Court made the following unjustified rulings in the summary judgment order based on the false allegations and representations made by the Trustee and his counsel: (1) finding that there was a fraudulent transfer (¶ 2); (2) avoiding the April 28, 2014 transfer (¶ 3); (3) finding that the property was received from the debtor, John McMahan, for insufficient value when he was insolvent (¶ 4); (4) entering judgment as a matter of law on all counts of the Trustee's complaint (¶ 5); (6) preserving all interests in the property for the benefit of and returning the same to the bankruptcy estate (¶¶ 6-7); (7) authorizing the Trustee to take all steps to recover the interests for the bankruptcy estate (¶ 8); (8) authorizing the Trustee to sell the property for the benefit of the bankruptcy estate (¶ 9); (9) awarding the full value of the real property to the Trustee in the minimum amount of $337,000.00 (¶ 10); (10) awarding attorney's fees, costs and post-judgment interest to the Trustee (¶ 11); amongst other relief (Doc. No. 74).

12.   However, these rulings were all based on faulty and insufficient allegations, a lack of diligence by the Trustee and his counsel in ascertaining the actual facts, misrepresentations about the facts, breach of fiduciary duties to the Court and the drafting of a proposed order that conflicts with the facts and lacked support in the record.

4

13.   Equally troubling is the fact that the Trustee and counsel continued to pursue the sale of the Geneva property and sign frivolous pleadings even after the facts became known that the **debtor never owned or had any interest in the property and those facts were conveyed to the Trustee's counsel** along with a copy of the file from Chicago Title.  The Court ordered that the property be sold, based on the Trustee's false assertions, even after the frivolous nature of the claim became known.

14.   The Trustee also failed to follow the law with respect to fraudulent conveyances.  Once the purported fraudulent conveyance was unwound, the next requisite step would have been to reinstate the former title to the property.  Here, that would have been the land trust.  The Trustee, however, never took that requisite step skipping that in its pursuit of summary judgment and entry of the order that it presented to the Court.  Necessarily, title should have been placed back into the land trust prior to any other disposition.  That never occurred and was a breach of the Trustee's fiduciary duty to the Court.

15.   Equally and importantly, there never was a basis to allow the Trustee to sell the property and for the proceeds to be kept for the bankruptcy estate.  Nor was there any basis for the award of attorney's fees since the case was frivolous and contrary to actual facts.

16.   Movants have suffered immeasurable damage from the Trustee's and counsel's wrongful acts.  Property has been seized and sold without any basis.  Monies have been spent in that endeavor on various things, including but not limited to, real estate commissions, legal fees and other associated expenses.  The Trustee and his counsel have also submitted exorbitant bills that have been paid in this case supporting the claims for breaches of fiduciary duty and frivolous actions.  Those payments should be disgorged and the monies returned to the bankruptcy estate.

### B.   Adversary Case Number 20-00167 – Edwards, Colorado Real Property

17.   Turning to the Edwards, Colorado real property, the Trustee filed adversary complaint
number 20-00167 (Doc. No. 1) alleging a fraudulent transfer of title.  Therein, the Trustee alleged
that the debtor, John McMahan and his wife, Lynn McMahan, acquired a fee simple interest in the
real property on October 18, 2010, which was admitted to be held in joint tenancy (Doc. No. 1, ¶
14).  The joint tenants then transferred title to the Colorado property to Trinity Green-Colorado,
LLC on December 29, 2013 (*Id*., ¶ 15).  This transaction was alleged to have been fraudulent and
the Trustee sought to have it set aside and avoided with the property and its value being claimed for
the benefit of the bankruptcy estate (*Id*., Counts I-III).

18.   The Court then entered summary judgment in adversary case 20-00167 on February 7,
2022, in favor of the Trustee (Doc. No. 69) as well as a final order.  The relief entered in the
summary judgment Order is problematic, unjustified and erroneous even if the Court correctly found
that a fraudulent transfer occurred, a point not conceded.  Critically, if the 2013 conveyance is
avoided, title to the real property necessarily had to be reinstated into the joint tenancy, by operation
of law, with the joint tenants resuming their roles as co-tenants.

19.   Under Colorado law, where this property is situated, joint tenancy is a form of property
ownership in which each joint tenant possesses the entire estate, rather than a fractional share.
*Taylor v. Canterbury*, 92 P.3d 961, 964 (Colo. 2004).  As such and assuming *arguendo* that there
was a meritorious claim to avoid a fraudulent transfer, at most the Trustee had a claim for the
debtor's 50% beneficial interest in the real property.  Lynn's 50% beneficial interest could not be
impacted in any way by the adversary proceeding and the Trustee never had any legitimate claim

whatsoever against her half-interest in the property.  In other words, at most, the Trustee could be granted 50% of the value of the Colorado property for the bankruptcy estate.

20.   Yet, the summary judgment order entered in the adversary case (presumably drafted by the Trustee's counsel) goes much further than what was justified, legally (Doc. No. 69).

21.   The Court made the following improper, unwarranted and specious rulings in that case: (1) preserving all interests in the real property for the benefit of the bankruptcy estate (¶ 6); (2) returning all interests in the property and title to the bankruptcy estate (¶ 7); (3) authorizing the Trustee to sell the property for the benefit of the bankruptcy estate (¶ 9); (4) awarding the full value of the real property to the Trustee in the minimum amount of $1,980,000.00 (¶ 10); (5) awarding attorney's fees, costs and post-judgment interest to the Trustee (¶ 11); amongst other relief (*Id*.).

22.   Here, the Court's summary judgment and final rulings are plainly erroneous, on their face, in granting all interests and value in the Colorado property to the bankruptcy estate, when at most, only a 50% recovery was justifiable.

23.   The Trustee failed to follow the law with respect to fraudulent conveyances.  Once the purported fraudulent conveyance was unwound, the next requisite step would have been to reinstate the former title to the property.  Here, that would have been to joint tenancy.  However, the Trustee never took that requisite step skipping that in its pursuit of summary judgment and order that it presented to the Court for entry.  Necessarily, title should have been placed back into the joint tenancy prior to any other disposition.  That never occurred and was a breach of the Trustee's fiduciary duty to the Court.

24.   Moreover, relief was entered by the Court against Lynn's 50% joint tenancy property interest despite the fact that she was not a party to the adversary case.  The Trustee never sued her

and she was never before the Court in her individual capacity.  Yet, the Trustee continued to pursue the sale of the property, appointing its sales agent, soliciting bids and ultimately selling the property and claiming the proceeds for the bankruptcy estate.

25.   Movants have suffered immeasurable damage from the Trustee's and counsel's wrongful acts.  Property has been seized and sold without any basis.  Monies have been spent in that endeavor on various things, including but not limited to, real estate commissions, legal fees and other associated expenses.  The Trustee and his counsel have also submitted exorbitant bills that have been paid in this case supporting their breaches of fiduciary duty and frivolous actions.  Those payments should be disgorged and the monies returned to the bankruptcy estate.

### C.   Adversary Case Number 20-00165 – Damen Avenue, Chicago, Illinois Real Property

26.   With respect to the real property situated at 1240 N. Damen Avenue, Unit 1, Chicago, Illinois, the Trustee filed adversary complaint number 20-00165 on April 30, 2020 (Doc. No. 1) alleging a fraudulent transfer of title.  Therein, the Trustee alleged that the debtor, John McMahan and his wife, Lynn, acquired a fee simple interest in the real property on September 11, 2007, which was admitted to be held in joint tenancy (Doc. No. 1, ¶ 19).  The joint tenants then transferred title to the property to Trinity Green, LLC-1240 N. Damen on April 3, 2014 (*Id*., ¶ 20).  This transaction was alleged to have been fraudulent and the Trustee sought to have it set aside and avoided with the property and its value being claimed for the benefit of the bankruptcy estate (*Id*., Counts I-III).

27.   The Court then entered summary judgment in adversary case 20-00165 on February 7, 2022, in favor of the Trustee (Doc. No. 74).  Similar to the order entered in case number 20-00167 impacting the Colorado real property, the relief entered was unjustified because the property should

8

have returned to joint tenancy even if a fraudulent transfer was found to have occurred.  The joint

tenants, in that instance, should have resumed their roles as co-tenants.

28.   Under Illinois law, the creation and perpetuation of a joint tenancy is dependent upon

four unities: interest, title, time and possession.  *Harms v. Sprague*, 105 Ill. 2d 215, 220 (1984).

A joint tenancy is a "present estate in all the joint tenants, each being seized of the whole."  *Id.*, 105

Ill. 2d at 224.

29.   As such, even if there is a supportable claim to avoid a purportedly fraudulent transfer,

a point not conceded, at most the Trustee had a claim for the debtor's 50% beneficial interest in the

real property.  Again, Lynn's 50% beneficial interest could not be impacted in any way by the

adversary proceeding and the Trustee never had any legitimate claim whatsoever against her half-

interest in the property.  In other words, at most, the Trustee could have been granted 50% of the

value of the Damen Avenue property.

30.   Here, the summary judgment order entered in the adversary case (presumably drafted

by the Trustee's counsel) extends much further than what is legally justified (Doc. No. 74).  The

Court made the following improper, unwarranted and specious rulings in that case: (1) preserving

all interests in the real property for the benefit of the bankruptcy estate (¶ 6); (2) returning all

interests in the property and title to the bankruptcy estate (¶ 7); (3) authorizing the Trustee to sell

the property for the benefit of the bankruptcy estate (¶ 9); (4) awarding the full value of the real

property to the Trustee in the minimum amount of $519,195.00 (¶ 10); (5) awarding attorney's fees,

costs and post-judgment interest to the Trustee (¶ 11); amongst other relief.

31.   The Trustee failed to follow the law with respect to fraudulent conveyances.  Once the

purported fraudulent conveyance was unwound, the next requisite step would have been to reinstate

the former title to the property. Here, that would have been to joint tenancy. However, the Trustee never took that requisite step skipping that in its pursuit of summary judgment and order that it presented to the Court for entry. Necessarily, title should have been placed back into the joint tenancy prior to any other disposition. That never occurred and was a breach of the Trustee's fiduciary duty to the Court.

32. Moreover, relief was entered by the Court against Lynn's 50% joint tenancy property interest despite the fact that she was not a party to the adversary case. The Trustee never sued her and she was never before the Court in her individual capacity. Yet, the Trustee continued to pursue the sale of the property, appointing its sales agent, soliciting bids and ultimately selling the property and claiming the proceeds for the bankruptcy estate.

33. Movants have suffered immeasurable damage from the Trustee's and counsel's wrongful acts. Property has been seized and sold without any basis. Monies have been spent in that endeavor on various things, including but not limited to, real estate commissions, legal fees and other associated expenses. The Trustee and his counsel have also submitted exorbitant bills that have been paid in this case supporting their breaches of fiduciary duty and frivolous actions. Those payments should be disgorged and the monies returned to the bankruptcy estate.

### Proceedings Against the Trustee

34. "The bankruptcy court has original and exclusive jurisdiction over all cases under title 11, 28 U.S.C. § 1334(a), and original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11, 28 U.S.C. § 1334(b)." *Krasnoff v. Marshack* (*In re Gen. Carriers Corp.*), 258 B.R. 181, 189 (9th Cir. BAP 2001). In addition, the bankruptcy court has "exclusive jurisdiction . . . over all claims or causes of action that involve

10

construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." 28 U.S.C. § 1334(e)(2); see also *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624 (Bankr. E.D. Cal. 2012) (The bankruptcy court "has original and exclusive jurisdiction over the employment of counsel, their compensation, and their disclosure obligations, pursuant to 28 U.S.C. § 1334(e)(2), and has the authority to hear and determine this matter pursuant to 28 U.S.C. § 157(b)(1).").

35.  Here, the movants seek leave under the "Barton doctrine" to sue the Trustee for his breaches of fiduciary duty in accord *Barton v. Barbour*, 104 U.S. 126 (1881).  Under that doctrine, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."  *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 970 (9th Cir. 2005); see also *In re Kashani*, 190 B.R. 875, 884 (9th Cir. 1995).

36.  As a starting point, "the prospective plaintiffs must set forth a *prima facie* case against the trustee."  *Id.*, 190 B.R. at 885.  Even then, the bankruptcy court's discretion is broad: "the bankruptcy court may conclude, even after the party seeking leave has met the requirements of presenting a *prima facie* case against the trustee, that the suit should more properly be maintained in the bankruptcy court."  *Id.*, at 886.

37.  As the Seventh Circuit has held, the Barton doctrine extends to bankruptcy trustees because "[t]he trustee in bankruptcy is a statutory successor to the equity receiver" and like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. The Barton doctrine continues to apply even after a bankruptcy estate is closed because it

continues to serve important purposes.  *In re Crown Vantage, Inc.*, 421 F.3d 963, 972 (9th Cir. 2005).

38.    The policy reasons for requiring leave to sue a trustee enables bankruptcy judges to monitor the work of the trustees more effectively.  It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.  *In re Linton*, 136 F.3d at 545.

39.    The doctrine does not apply "if, by mistake or wrongfully, the receiver takes possession of property belonging to another."  *Barton*, 104 U.S. at 134.  An individual whose property is wrongfully seized may bring suit against a receiver "personally as a matter of right; for in such case the receiver would be acting ultra vires."  *Id.*

40.    Here, movants provide notice of their intent to sue the Trustee.  The question before the Court is whether the Trustee's wrongful actions in this case require that lawsuit to take place within the bankruptcy case or whether they may be pursued in Illinois state court.  Movants seek leave to bring their lawsuit in Illinois state court.  Alternatively, they seek leave to bring their lawsuit in the confines of this bankruptcy action.

WHEREFORE, for the reasons contained in this motion, the adversary case Defendants, Trinity Green LLC, Trinity Green, LLC – 1240 N. Damen, Trinity Green  LLC – 509 Peyton and Trinity Green – Colorado, LLC, and movants Lynn McMahan and Trinity Development, Inc., an Illinois corporation, hereby request that leave be granted for the movants to appear and for leave to sue the Trustee either in State court or in this proceeding.

Dated:  March 22, 2024

> Respectfully submitted,
>
> TRINITY GREEN, LLC, TRINITY GREEN, LLC–1240 N. DAMEN, TRINITY GREEN, LLC – 509 PEYTON and TRINITY GREEN –  COLORADO, LLC
>
> and
>
> LYNN MCMAHAN and TRINITY DEVELOPMENT, INC.
>
> /s/ Robert J. Shelist
>
> By:_____
>          Robert J. Shelist

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
205 N. Michigan Avenue
Suite 810
Chicago, Illinois 60601
(312) 226-0675

## <u>CERTIFICATE OF SERVICE</u>

      I, Robert J. Shelist, certify that on March 24, 2024 I caused to be filed the foregoing document with the Clerk of the Court via the CM/ECF system.  I further certify that I caused to be served a true and accurate copy of the foregoing document upon counsel of record in this case, by electronic mail.

      Respectfully submitted,

      /s/ Robert J. Shelist

By:_____
      Robert J. Shelist

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
205 N. Michigan Avenue
Suite 810
Chicago, Illinois 60601
(312) 226-0675