UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> JOHN T. MCMAHAN, <br><br> Debtor. | Chapter 7 <br><br> Case No. 18-14064 <br><br> Honorable Janet S. Baer |

**CHAPTER 7 TRUSTEE'S RESPONSE TO LAKE FOREST BANK
AND TRUST COMPANY'S MOTION TO DETERMINE PRIORITY OF LIENS**

Mr. Thomas E. Springer (the "Trustee"), not individually but solely in his capacity as chapter 7 trustee for the John T. McMahan (the "Debtor") bankruptcy estate (the "Estate"), by and through the undersigned counsel, hereby submits his *Response to Lake Forest Bank & Trust Company's Motion to Determine Priority of Liens* (this "Response") to Lake Forest Bank & Trust Company's ("Lake Forest Bank") *Motion to Determine Priority of Liens* (the "Motion") [Dkt. No. 482], and hereby seeks the entry of an order: (i) denying the Motion; and (ii) granting any related relief. In support of this Response, the Trustee respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**BACKGROUND**

2. On May 14, 2018 (the "Petition Date"), John T. McMahan (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code [Dkt. No. 1], thereby commencing the above-styled case (the "Bankruptcy Case").

1

3. The Trustee was appointed by the Office of the United States Trustee as Trustee to oversee and administer property of the Estate on May 17, 2018. [Dkt. No. 9].

4. On April 30, 2020, the Trustee commenced three adversary proceedings, detailed herein, each for the purpose of unwinding a transfer of real property (collectively, the "Real Properties") from the Debtor to various companies under his or his spouse's control – specifically: Trinity Green, LLC (and affiliated series LLCs, Trinity Green, LLC-88 W. Schiller, Trinity Green, LLC-509 Peyton, Trinity Green, LLC-1240 N. Damen and Trinity Green, LLC-59 W. Schiller and, collectively with Trinity Green, LLC, "Trinity Green"), Trinity Development, Inc / Trinity Development II, Inc. ("Trinity Development" and, collectively with Trinity Green, the "Trinity Entities").

5. First, the Trustee, through counsel, initiated an adversary proceeding styled as *Thomas E. Springer, solely in his capacity as the chapter 7 trustee of the Debtor, v. Trinity Green, LLC & Trinity Green, LLC – 1240 N. Damen* (the "Damen Adversary"), assigned case no. 20-AP-00165, seeking to unwind the Debtor's transfer of the real property commonly referred to as 1240 N Damen Ave., Unit 1, Chicago, IL 60622 (the "Damen Property") to the defendants. [*See* 20-AP-00165 at Dkt. No. 1].

6. Second, the Trustee, through counsel, initiated an adversary proceeding styled as *Thomas E. Springer, solely in his capacity as the chapter 7 trustee of the Debtor, v. Trinity Green, LLC & Trinity Green, LLC – 509 Peyton* (the "Peyton Adversary"), assigned case no. 20-AP-00166, seeking to unwind the Debtor's transfer of the real property commonly referred to as 509 Peyton St., Geneva, Illinois 60134 (the "Peyton Property") to the defendants. [*See* 20-AP-00166 at Dkt. No. 1].

7. Third, the Trustee, through counsel, initiated an adversary proceeding styled as *Thomas E. Springer, solely in his capacity as the chapter 7 trustee of the Debtor, v. Trinity Green-Colorado LLC* (the "Red Draw Adversary," and collectively with the Damen Adversary and the Peyton Adversary, the "Trinity Avoidance Actions"), and assigned case no. 20-AP-00167, seeking to unwind the Debtor's transfer of the real property commonly referred to as 348 Red Draw, Edwards, Colorado, 81632 (the "Red Draw Property," and collectively with the Damen Property and the Peyton Property, the "Real Properties") to the defendants. [*See* 20-AP-00167 at Dkt. No. 1].

8. On February 7, 2022, this Court entered final judgment orders (the "Final Judgment Orders") granting the Trustee the reliefs sought in the Trinity Avoidance Actions. [*See* 20-AP-00165 at Dkt. No. 75; 20-AP-00166 at Dkt. No. 69; and 20-AP-00167 at Dkt. No. 71].

9. On October 7, 2022, eight months later, the Defendants filed their *Motion[s] for Leave to Appear, to Vacate all Substantial Rulings in the Adversary Case, for Dismissal on Limitation Grounds and for the Entry of Other Relief* (the "First Motions to Vacate"), seeking to vacate the Final Judgment Orders. [*See* 20-AP-00165 at Dkt. No. 80; 20-AP-00166 at Dkt. No. 74; and 20-AP-00167 at Dkt. No. 78].

10. Due to the ongoing disputes by the Trinity Entities and Lynn McMahan, this Court entered four orders directing the Trustee to escrow the proceeds from the sale of the Real Properties (the "Sale Proceeds") pending resolution of the First Motions to Vacate. *See* [Dkt. Nos. 303, 369, 428, and 433].

11. The Trustee liquidated all the Real Properties, and on February 26, 2024, the Trustee filed his *Motion to Authorize Disbursement* (the "Trustee's Disbursement Motion") [Dkt. No. 459], seeking authorization to disburse the Sale Proceeds.

3

12. On April 18, 2024, Lake Forest Bank filed the present Motion, seeking a determination of its secured claim.

13. On August 13, 2024, the Court entered an order granting the Trustee's Disbursement Motion. [Dkt. No. 516].

*The Lake Forest Bank Claim*

14. On September 24, 2018, Lake Forest Bank filed its amended proof of claim (the "Claim"), assigned as claim number 8-2 in the claims register, asserting a secured claim amount of $1,887,405.78. The amended proof of claim lists the secured basis as a "State Court Judgment" and the collateral securing its claim is stated as "[a]ll personal property and any real property owned by the Debtor located in Cook County, IL, Kane County, IL and Walworth County, WI" as well as "Service of Citation to Discover Assets, recording of Memoranda of Judgment and docketing of Judgment." In support, Lake Forest Bank attaches a "Memorandum of Judgment," a "Notice of Entry of Foreign Judgment," a "Citation to Discover Assets," and other related documents.

15. According to the Motion, Lake Forest Bank's lien rights derive from multiple sources. First, Lake Forest Bank alleges it recorded its judgment with the Cook County and Kane County Recorder of Deeds on October 13, 2015 and October 20, 2015, respectively, thereby creating liens pursuant to 735 ILCS § 5/12-101 on the Damen Property and the Peyton Property. Motion, ¶¶ 14-16. Second, Lake Forest Bank asserts that it holds a perfected citation lien on non-exempt personal property pursuant to 735 ILCS § 5/2-1402(m) as it served the Debtor with a citation to discover assets on November 16, 2015. *Id.* at ¶¶ 14, 17.

**LEGAL DISCUSSION**

16.     The Trustee successfully prosecuted three avoidance actions (the "Trinity Avoidance Actions") which clawed back three real estate transfers pursuant to section 544 of the Bankruptcy Code, based on the "golden creditor rule," whereby the Trustee obtained the powers under the Internal Revenue Code to unwind fraudulent transfers for up to ten years. *See* 26 U.S.C. § 6502.

17.     The Trinity Avoidance Actions' judgments led to three Court-approved sales of real property, including the Damen Property and the Peyton Property. However, Lake Forest's purported liens on real property did not appear on any title searches performed prior to any of these sale closings.

***Judgment Liens on Real Property Under Illinois Law***

18.     Under section 12-101 of the Illinois Code of Civil Procedure, a judgment from an Illinois state court, or a federal court located in Illinois, becomes a lien on real property only after a transcript, certified copy, or memorandum of the judgment is recorded at the office of the county recorder in the county where the property is located. 735 ILCS 5/12-101; *see also In re Spangler*, 653 B.R. 573, 580 (Bankr. N.D. Ill. 2023) ("Section 12-101 of the Illinois Code of Civil Procedure is the statute permitting a judgment to impose a lien.").

19.     Because these statutory requirements are "specific," Illinois courts demand strict compliance with the statute to perfect a lien on real property. *Spangler*, 653 B.R. at 580.

20.     Here, while Lake Forest Bank asserts a secured interest in certain of the Debtor's real property by virtue of its judgment lien, the Motion fails to demonstrate that such judgments were indeed recorded with the relevant office of the county recorders.

5

21.     Indeed, record searches with the Cook County and Kane County Recorder's Offices, fail to demonstrate recordings of liens on either October 13, 2015, or October 20, 2015, respectively. Rather, the record searches demonstrate that Lake Forest Bank recorded no judgments with the Cook County and Kane County Recorder's Offices. True and accurate copies of the record searches with the Cook County and Kane County Recorder's Offices are attached hereto as **Exhibit A**.

22.     As such, because Lake Forest Bank has not complied with the "strict" requirements of 735 ILCS 5/12-101, no judgment liens have been created and Lake Forest Bank's claim is not secured by real property.

*Citation Liens on Personal Property Under Illinois Law*

23.     Under Section 2-1402 of the Illinois Code of Civil Procedure, service of a citation to discover assets creates a perfected lien on all of a debtor's non-exempt personal property as of the service date. *See* 735 ILCS 5/2-1402(m); *see also Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997) ("The lien is considered perfected as of the date of service of the citation.").

24.     A citation proceeding authorized by section 2-1402 "continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require." Ill. Sup. Ct. R. 277(f); *In re Marino*, 201 B.R. 234, 247 (Bankr. N.D.Ill. 1996).

25.     Continuation of the citation proceeding is also a continuation of the citation lien. When the citation proceeding is terminated, the citation lien terminates. *See* 735 ILCS 5/2-1402(m)

("The lien is effective for the period specified by Supreme Court Rule."). The purpose of this "deadline is to prevent property from being encumbered by judgment liens indefinitely and to protect debtors from harassment by their creditors." *TM Ryan Co. v. 5350 South Shore, LLC*, 361 Ill.App.3d 352, 297 Ill.Dec. 72, 836 N.E. 2nd 803, 810-11 (2005) (citation omitted).

26. Here, the Motion alleges that Lake Forest Bank served the Debtor with a citation to discover assets on November 16, 2015. Motion, ¶ 17. However, Lake Forest Bank has failed to demonstrate that it indeed served the citation to discover assets. Specifically, the service page of the citation attached to the Claim is unsigned. *See* Claim, pg. 17-18. Accordingly, Lake Forest Bank has not met its burden of proving it has a perfected lien.

27. However, even if Lake Forest Bank has a perfected lien, Lake Forest Bank's lien still would not attach to the Sale Proceeds. *See* 735 ILCS 5/2-1402(m) (perfected lien attaches to a debtor's non-exempt *personal* property) (emphasis added); *see also In re Pierport Dev. & Realty, Inc.*, 491 B.R. 544, 549 (Bankr. N.D. Ill. 2013) ("Unless avoided in the bankruptcy case, valid liens pass through a bankruptcy unaffected … [but] a pre-petition lien does not attach to rights or actions by the trustee of a bankruptcy estate that did not exist prior to the bankruptcy filing.").

28. In *Pierport*, pre-petition, a union-creditor obtained a judgment against the debtor and instituted a supplementary proceeding under 735 ILCS 5/2–1402. *Id.* at 546. A citation to discover assets was issued and served on the debtor. *Id.* The debtor then filed a petition under chapter 7, and the trustee determined that the debtor's assets as of the petition date was estimated at $30,350.00. *Id.* The trustee also identified three potential fraudulent transfer claims, which were settled for $325,000.00 in exchange for the assignment of certain of the estate's interest in tangible and intangible assets of the debtor as well as mutual releases. *Id.* The union asserted that its claim, allegedly secured by its citation lien, attached to all proceeds of the fraudulent transfer settlement

7

(the $325,000). *Id.* at 548. The trustee argued that the secured portion of the union's claim was limited to the value of proceeds received for the estate's interest in the transferred assets that were valued in the motion to approve settlement (at $30,500.00). *Id.* at 548. The bankruptcy court held that the union's citation lien only attached to the $30,500.00, and not the remaining $294,500.00, as the fraudulent transfer claims only arose as of the bankruptcy and were therefore not subject to any creditor's pre-petition lien. *Id.* at 548-50.

29.  Here, the Trinity Avoidance Actions were not available to Lake Forest Bank pre-petition as the cause of action arose only due to the Case and its "golden creditor" statute available to the Trustee. In other words, pre-petition, Lake Forest Bank had no ability to prosecute these fraudulent conveyance actions under the Internal Revenue Code. As such, any secured claim, to the extent it exists, does not attach to the Sale Proceeds but is rather limited to the proceeds attributable to any previously disposed non-exempt personal property. Here, as demonstrated by the individual estate property record attached as **Exhibit B**, the Estate has realized $47,250.00 from the sale of personal property (the "Personal Property Proceeds"). Therefore, to the extent Lake Forest Bank has a perfected lien in non-exempt personal property, the secured portion of its claim is limited to the Personal Property Proceeds.

30.  In sum, Lake Forest Bank has no secured claim against the Real Properties as no recordings were made with the relevant county recorder's offices. Furthermore, to the extent Lake Forest Bank's citation lien was perfected and remains valid, its secured claim is limited to the Personal Property Proceeds in the amount of $47,250.00.

8

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court enter an order, in substantially the same form as the proposed order attached hereto: (i) denying the Motion; and (ii) granting any related relief.

Dated: September 16, 2024                                             Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

*/s/ Aaron L. Hammer*
Aaron L. Hammer, Esq. (6243069)
ahammer@ktslaw.com
Nathan E. Delman, Esq. 6296205)
ndelman@ktslaw.com
Dante Wen, Esq. (6333529)
dwen@ktslaw.com
500 W. Madison, Suite 3700
Chicago, IL 60661
Telephone: (312) 606-3200

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2024, I caused a true and correct copy of the foregoing **CHAPTER 7 TRUSTEE'S RESPONSE TO LAKE FOREST BANK AND TRUST COMPANY'S MOTION TO DETERMINE PRIORITY OF LIENS**, to be filed with the Court's CM/ECF system and to be served in accordance therewith to all parties receiving electronic noticing.

A copy of this filing was also served electronically on Lake Forest Bank & Trust Company addressed as follows:

Kurt M. Carlson (kcarlson@carlsondash.com)
C. Douglas Moran (cdmoran@carlsondash.com)

By: */s/ Aaron L. Hammer*

US2008 30444881 2